Gerald Grunsfeld, Esq.
Lazar, Grunsfeld Elnadav, LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
Telephone: (718) 947-7476
*Attorneys for Plaintiff, Art And Cook, Inc.*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ART AND COOK, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ABRAHAM HABER. <br><br> Defendant, | Case No. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE**

**TABLE OF CONTENTS**

Introduction…………………………………………………………………………...……1

Legal Argument……………………………………………………………………………...2

   A. The Standard For Injunctive Relief ……………………………………………………….2

      1. Likelihood of Success on the Merits……………………………………………………2

      2. Plaintiff will Suffer Irreparable Harm if a Temporary Restraining Order is not Granted……………………………………………………………………………….5

      3. Balance of Hardships Tips in the Plaintiff's Favor……………………………..7

      4. Public Interest would not be Disserved by the Issuance of a Preliminary Injunction……………………………………………………………………………….7

Conclusion…………………………………………………………………………………...8

# TABLE OF AUTHORITIES

**Cases**

Free Country Ltd v. Drennen,
2016 WL 7635516, at *3 (S.D.N.Y. Dec. 30, 2016)……………………………………....2,3

North Atlantic Instruments, Inc. v. Haber,
188 F.3d 38, 46 (C.A.2 (N.Y.),1999)…………………………………………………….....4

Ticor Title Ins. Co. v. Cohen,
173 F.3d 63, 69–70 (2d Cir.1999)…………………………………………………………6

Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.,
323 F.Supp.2d 525, 532 (S.D.N.Y.,2004)…………………………………………………6

Shred–It USA, Inc. v. Mobile Data Shred, Inc.,
202 F.Supp.2d 228, 233 (S.D.N.Y.2002)……………………………………………….....6

Secured Worldwide LLC v. Kinney,
2015 WL 1514738, at *11 (S.D.N.Y.,2015)………………………………………………6

Wenner Media LLC v. Northern & Shell North America Ltd.,
2005 WL 323727, (S.D.N.Y.,2005) [at *4]………………………………………………6

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn,
73 F.Supp.2d 425, 428 (S.D.N.Y.,1999)…………………………………………………..7

Marsh USA Inc. v. Schuhriemen,
183 F.Supp.3d 529, 537 (S.D.N.Y., 2016)………………………………………………..8

Empower Energies, Inc. v. SolarBlue, LLC,
2016 WL 5338555, at *13 (S.D.N.Y., 2016)……………………………………………...8

**<u>Statutes</u>**

17 U.S.C. 502(a)..…………………………………………………………………………1

18 U.S.C. §1831…………………………………………………………………………..2

# INTRODUCTION

Plaintiff, Art and Cook, Inc., ("Art & Cook") by its attorneys, respectfully submits this memorandum of law in support of its motion pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and 17 U.S.C. 502(a), for a temporary restraining order and a preliminary injunction against Defendant, Abraham Haber ("Mr. Haber"). Simultaneously with filing this motion, Plaintiff has also filed a Summons and Complaint alleging causes of action sounding in breach of fiduciary duty, breach of duty of loyalty, breach of the Defend Trade Secrets Act, common law misappropriation of Trade Secrets and confidential information, Unfair Competition, Tortious Interference with Prospective Advantage, and Unjust Enrichment.

The factual background underlying this Order to Show Cause has been described at length in the supporting Affidavit by Art & Cook President, Allan Ben ("Ben Affidavit."). In brief summary, Plaintiff alleges that Defendant spent the final four months of his employment working on developing a new business venture to compete with Art & Cook. The Affidavit also alleges that Defendant e-mailed numerous sensitive and confidential company documents containing Art & Cook trade secrets to his personal e-mail address so he would have access to the information after leaving Art & Cook. Since having been terminated by Art & Cook because of his illegal and improper conduct, Mr. Haber has been using the trade secrets he misappropriated from Art & Cook to set up a competing business. As per Mr. Ben's Affidavit, Plaintiff faces an imminent risk of irreparable harm if the Court does not issue an immediate restraining Order prohibiting Mr. Haber from using the trade secrets he misappropriated.

As such, Plaintiff now moves for a restraining Order and preliminary injunction enjoining Mr. Haber from:

      i.      Using or disclosing trade secrets or confidential information taken from Art & Cook, Inc., and/or its subsidiary/affiliated entities.

      ii.      Using or disclosing information ABRAHAM HABER developed/worked on using Art & Cook, Inc. computers.

      iii.      Using or disclosing information ABRAHAM HABER developed/worked on while still employed by Art & Cook, Inc., and during the course of his employment.

      iv.      Using the "Gripps" mark for commercial purposes in relation to homeware/kitchenware/cleaning products.

## LEGAL ARGUMENT

### A. THE STANDARD FOR INJUNCTIVE RELIEF

In the recent, and factually very similar case of *Free Country Ltd v. Drennen*, 2016 WL 7635516, at *3 (S.D.N.Y. Dec. 30, 2016), an employer sought a restraining Order and preliminary injunction against a former employee it accused of stealing its trade secrets to set up a competing product line. The Court noted the applicable standard for obtaining either injunction.

> A party seeking a TRO, like one seeking a preliminary injunction, must typically show four elements: (1) a likelihood of success on the ultimate merits of the lawsuit; (2) a likelihood that the moving party will suffer irreparable harm if a TRO is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the relief granted. Id. (citing Salinger v. Colting, 607 F.3d 68, 79–80 (2d Cir. 2010)).

As will be shown, all four elements of this standard are satisfied in the instant case.

### 1.      LIKELIHOOD OF SUCCESS ON THE MERITS

The basis for this motion is that in violation of the Defend Trade Secrets Act (18 U.S.C. §1831, ("DTSA"), Mr. Haber misappropriated Plaintiff's valuable trade secrets, and is currently using those trade secrets to set up a competing company, and at any moment, Mr.

2

Haber's use of those trade secrets could cause Plaintiff irreparable harm.

As the Court noted in *Free Country Ltd (supra at 3),* in order to show a violation of the DTSA, Plaintiff must demonstrate the:

> "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty."

Here, as per the Ben Affidavit, while still employed at Art & Cook, Mr. Haber used company computers, and company internet access, to e-mail himself documents from the Art & Cook servers that contained lists of Art & Cook's customers, and the buyers' contact information at those companies. *See Affidavit of Allan Ben at ¶¶15 and 20.* Mr. Haber's misappropriation of this information while using Art & Cook resources was clearly illegal. Having obtained Art & Cook's trade secrets illegally, Mr. Haber has been using Art & Cook's trade secrets for improper purposes. For example, on February 17, 2017, Mr. Haber contacted the Mr. Tony Chen, the owner of the Hope Sun factory in China. Hope Sun manufactures many of Art & Cook's products exclusively for Art & Cook, using Art & Cook's proprietary designs. Mr. Haber asked Mr. Chen to manufacture Art & Cook's line of products for him but to make very slight changes to the products so that Mr. Haber's scheme would not be detected. *See Affidavit of Allan Ben at ¶21.*

Another example of Mr. Haber's improper use of Art & Cook's trade secrets is using Art & Cook's list of buyer contact information to contact a Buyer for Ross Stores to see if he could supply her with mops (once his new business was up and running). *See Affidavit of Allan Ben at ¶16.*

Another example of Mr. Haber's improper use of Art & Cook's trade secret's was his attempt to obtain the a domain for Gripps.com, where Gripps was the brand name of a soon to be released line of cleaning products by Art & Cook. *See Affidavit of Allan Ben at ¶18.*

In *North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 46 (C.A.2 (N.Y.),1999), the Court noted that:

> Numerous cases applying New York law have held that where, as here, it would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply.

The rational as set forth in *North Atlantic Instruments, Inc. v. Haber* applies here too. For example, as noted in Mr. Ben's Affidavit, the name of the Chinese factory that manufactures many of Art & Cooks products, and the contact information for the owner of the factory was information that Art & Cook discovered by attending a trade show in China and would have been incredibly difficult if not impossible for Mr. Haber to have obtained had he not misappropriated it from Art & Cook. *See Affidavit of Allan Ben at ¶21*. Furthermore, as noted in the Allan Ben Affidavit, the information pertaining to Art & Cook's suppliers and buyers ranged from exceedingly difficult to obtain, to close to impossible. In *North Atlantic Instruments, Inc. v. Haber,* the Court also noted that while sometimes a customer list is not a trade secret, the individual contact information for persons who work at that company is a trade secret. *Id.* Furthermore, the Court held that even where a former employee utilizes information he has not misappropriated but rather recalls from memory, said information still constitutes trade secrets if the information is not readily ascertainable without having obtained the information through the prior employment with the Plaintiff. *Id at 47.*

Thus, it is respectfully submitted that in contacting the owner of a factor in China that manufactured Art & Cook's products and asking him to supply him with the same line of

products, in contacting a buyer at Ross Stores, and in attempting to register a domain address that used the name of one of Art & Cook's pending product lines, Mr. Haber made improper use of misappropriated trade secrets. It is also respectfully submitted that the files Mr. Haber e-mailed to himself, consisting of Art & Cook's brand strategies, and Art & Cook's customer lists, complete with the contact information for the buyers, are protectable trade secrets, that Mr. Haber is almost certainly continuing to exploit for the purpose of setting up a competing venture. Undoubtedly, once discovery is underway, Art & Cook will obtain evidence of numerous other examples of Mr. Haber using trade secrets he misappropriated from Art & Cook to the benefit of the company he is working on to compete with Art & Cook.

As Mr. Ben's Affidavit and the Exhibits annexed thereto provides prima facie evidence that Mr. Haber has used trade secrets he misappropriated from Art & Cook to try and form a competing venture, Art & Cook has met the standard for showing that Mr. Haber breached the DTSA, and therefore has shown a likelihood of success on the merits.

2. **PLAINTIFF WILL SUFFER IRREPARABLE HARM IF A TEMPORARY RESTRAINING ORDER IS NOT GRANTED**

With every passing day that Mr. Haber is not enjoined from using the trade secrets he misappropriated from Art & Cook, there is a real and imminent danger that Mr. Haber will use this information to pry away a key customer from Art & Cook, or to convince one of Art & Cook's key suppliers to begin supplying him with product using Art & Cook proprietary designs. Art & Cook has already uncovered attempts by Mr. Haber to use proprietary trade secrets he misappropriated to contact Art & Cook's customers and suppliers as outlined above and to obtain a domain name using the brand name for one of Art & Cook's pipe-line products. Had Mr. Haber succeeded in any of these attempts, and if he succeeds in any subsequent attempts, the damage would be both unquantifiable and irreparable. For example, if Mr. Haber succeeds in bringing to market a line of cleaning products using the Gripps name before Art & Cook does, there is a strong likelihood that

5

Art & Cook will never be able to recover the initiative from Mr. Haber. Generally speaking, the first to market has a significant and often unsurmountable advantage over the subsequent market entrants. Not only would the damage be irreparable if Mr. Haber succeeds in bringing to market a line of cleaning products using the Gripps name before Art & Cook does, but the damage would also be unquantifiable because Art & Cook would have no accurate way of estimating what damages it had sustained, due to the difficulty in proving future profits from a new product line.  Similarly, if Mr. Haber succeeds in convincing one of Art & Cook's key suppliers to provide him with Art & Cook's line of products, this would enable Mr. Haber to gain entry into a market he would not otherwise have access to and it would be very difficult for Art & Cook to prove that any resulting loss in its own sales was attributable to Mr. Haber. See also, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69–70 (2d Cir.1999); *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc., 323 F.Supp.2d 525, 532* (S.D.N.Y.,2004); and *Shred–It USA, Inc. v. Mobile Data Shred, Inc.*, 202 F.Supp.2d 228, 233 (S.D.N.Y.2002).

In *Secured Worldwide LLC v. Kinney*, 2015 WL 1514738, at *11 (S.D.N.Y.,2015), the Court noted a finding of irreparable harm was appropriate where an employee had misappropriated trade secrets even if the employer did not yet have proof that the employee had utilized said trade secrets.

> "Even where a trade secret has not yet been disclosed, irreparable harm may be found based upon a finding that trade secrets will inevitably be disclosed where, as here, 'the movant competes directly with the prospective employer and the transient employee possesses highly confidential or technical knowledge concerning [ ] marketing strategies, or the like .' " Es tee Lauder Companies Inc. v. Batra, 430 F.Supp.2d 158, 174 (S.D.N.Y.2006) (quoting EarthWeb, Inc. v. Schlack, 71 F.Supp.2d 299, 309 (S.D.N.Y.1999)). Equitable relief is particularly appropriate in trade secrets cases because "loss of trade secrets cannot be measured in money damages" and therefore "[a] trade secret once lost is ... lost forever." North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38, 49 (2d Cir.1999) (quoting FMC Corp. v. Taiwan Tainan Giant Indus. Co., 730 F.2d 61, 63 (2d Cir.1984) (per curiam)).

Furthermore, as noted by this Court in *Wenner Media LLC v. Northern & Shell North America Ltd.*, 2005 WL 323727, (S.D.N.Y.,2005) [at *4], irreparable harm is presumed when a party misappropriates trade secrets:

6

> "[i]t is clear that irreparable harm is presumed where a trade secret has been misappropriated." Lumex, Inc. v. Highsmith, 919 F.Supp. 624, 628 (E.D.N.Y.1996). In Lumex the district court cited and quoted the Second Circuit's decision in FMC Crp. v. Taiwan Tainan Giant Industrial Co., Ltd., 730 F.2d 61, 63 (2d Cir.1984) ("[I]t is clear that the loss of trade secrets cannot be measured in money damages.... A trade secret once lost is, of course, lost forever.") (citations omitted).

Thus, as per Second Circuit precedent, it is respectfully submitted that the Court must also find that Plaintiff will be irreparably harmed if Mr. Haber is not enjoined from utilizing the trade secrets he misappropriated from Art & Cook.

### 3.  BALANCE OF HARDSHIPS TIPS IN THE PLAINTIFF'S FAVOR

Because Plaintiff will suffer an irreparable injury entirely due to the wrongdoing of Defendant, it follows that the balance of hardships tips in Plaintiff's favor. In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Rahn*, 73 F.Supp.2d 425, 428 (S.D.N.Y.,1999), two former employees who misappropriated confidential information from Merrill Lynch including customer lists. The Court noted the standard needed to grant an injunction, including the requirement to show that the balance of hardship tipped in favor of the employer. The Court granted Merrill Lynch's motion for an injunction (thus implicitly finding that where an employee misappropriates his employer's customer lists, the balance of hardship is tipped in favor of the employer over the employee). Here too, the Court should find that the balance of hardship tips in Plaintiff's favor because without an injunction, Mr. Haber will be allowed to benefit from his misappropriation of Art & Cook's trade secrets at Art & Cook's expense.

### 4.  PUBLIC INTEREST WOULD NOT BE DISSERVED BY THE ISSUANCE OF A PRELIMINARY INJUNCTION

There is no public interest that is violated when a Court issues an injunction against a former employee preventing him from using misappropriated trade secrets. See *Marsh USA Inc.*

7

*v. Schuhriemen*, 183 F.Supp.3d 529, 537 (S.D.N.Y., 2016). As such, public interest would not be disserved by the issuance of an injunction this case. Indeed, there is a public interest in upholding the rule of law. See *Empower Energies, Inc. v. SolarBlue, LLC*, 2016 WL 5338555, at *13 (S.D.N.Y., 2016). Thus it is respectfully submitted that it is in the public interest for this Court to protect Plaintiff from having Mr. Haber unjustly enrich himself by using the trade secrets he misappropriated from Plaintiff.

## CONCLUSION

Thus, it is respectfully submitted that Plaintiff has shown that it meets the standard for a Restraining Order and a Preliminary Injunction. As such, it is respectfully submitted that the Court should issue an Order:

i. Using or disclosing trade secrets or confidential information taken from Art & Cook, Inc., and/or its subsidiary/affiliated entities.
ii. Using or disclosing information ABRAHAM HABER developed/worked on using Art & Cook, Inc. computers.
iii. Using or disclosing information ABRAHAM HABER developed/worked on while still employed by Art & Cook, Inc., and during the course of his employment.
iv. Using the "Gripps" mark for commercial purposes in relation to homeware/kitchenware/cleaning products.
v. Such further and different relief this Court deems proper.

Dated:  Brooklyn, New York
        March 23, 2013

Lazar, Grunsfeld Elnadav, LLP

By:_____/GG/_____
    GERALD GRUNSFELD

8

                                                    Attorneys for Plaintiff